# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA JASPER DIVISION

| | |
|---|---|
| JAMMIE DUCK, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No.: |
| V. ) | |
| ) | |
| WEYERHAUSER COMPANY, ) | JURY TRIAL DEMANDED |
| ) | |
| DEFENDANT(S). ) | |
| ) | |

## COMPLAINT

## JURISDICTION

1. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

3. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

5. Plaintiff, Jammie Duck, ("Plaintiff" or "Duck") is a resident of Columbus, Mississippi, and performed work for the Defendant in the counties composing the Jasper Division of the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Jasper Division.

6. Defendant Weyerhauser Company ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

7. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

8. At all times relevant to this Complaint, Defendant employed more than 500 employees.

## FACTS

9. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

10. Jammie Duck is a person of African ancestry, colloquially referred to as "African-American" "Black."

11. Plaintiff began his employment with defendant on or about January 9, 2018, as a Craftsman.

12. Later, Duck applied for and received a position as a sorter operator.

13. Duck worked at least 1250 hours in the 12 months before June 2020.

14. Duck had no significant disciplinary history other than a lock out tagout violation in the spring of 2020.

15. On or about June 10, 2020, Duck's wife was diagnosed with COVID-19.

16. After Duck's wife was diagnosed with COVID-19, Duck told Robert Sullivan, his supervisor about her diagnosis.

17. When Sullivan heard about the diagnosis, he told Duck that he was placed on leave until his wife tested negative for COVID-19.

18. Defendant did not provide Duck with any FMLA paperwork describing his right to FMLA leave.

19. Defendant did not provide Duck with any FMLA paperwork describing his right to return to his original position.

20. Although Duck's wife tested positive, Duck was never diagnosed with COVID-19.

21. While his wife was sick, Duck periodically called to check in with Sullivan.

22. During those calls, Sullivan complained that he was shorthanded because people were out with COVID-19.

23. Sullivan also complained that he was having to do craftsman work instead of supervisor work because so many people were out.

24. Duck's wife continued to test positive for COVID-19 until August of 2021.

25. When Duck reported that his wife's COVID-19 test was negative, the company did not immediately return him to work.

26. Instead, Defendant required him to wait an additional week after his wife tested negative before he could return to work.

27. In September, 2020, after the waiting period expired, Plaintiff returned to work, but the company did not return him to the position he held before his wife got sick.

28. Before his leave related to his wife's illness, Duck had applied for and received a position as a sorter operator.

29. After he returned, Duck was reassigned to the strapper and to help the crafts people, a less desirable position.

30. On October 16, 2020, Duck was on his break when his Supervisor Robert Sullivan, and Team Leader, Andrew Grocholski, both white males, called him back early to help clean up a sorter bin spill at the sorter machine.

31. Sullivan met with Duck and gave him the locks for lockout tagout.

32. Company procedures require that the responsible employee review and fill out a RADAR+ form documenting the lockout tagout procedure before beginning work.

33. When Duck returned from his break, he found Sullivan and Grocholski already locking out the sorter.

34. Duck then added his lock to the main box after Grocholski completed the procedure.

35. Sullivan returned with a form that was already filled-out.

36. Then Sullivan sent Oglesby, Grocholski and Duck into the machine together and watched as they entered.

37. When Duck joined Sulivan and Grocholski to clean the spill he did not know that they had not followed the lockout protocol.

38. At no time during the time that the three men were in the sorter was any of them more than 5-10 feet from each other, and none of them left the sorter.

39. After the three men were in the Sorter for about thirty minutes Sullivan said that the rollers were not locked out.

40. At that point, Sullivan told Grocholski to lockout the power from the outside of the sorter and Duck to lockout the air to the sorter from the inside.

41. Although there were three employees in the machine, Defendant only disciplined Mr. Duck.

42. According to protocol, the radar task leader was Grocholski and he was in charge of the lockout.

43. While working with Grocholski to resolve the issue, Mr. Sullivan questioned Plaintiff regarding whether equipment was locked out as required.

44. Grocholski admitted to Sullivan that he was responsible for the failure to lockout/tagout.

45. Defendant terminated Plaintiff's employment on or about October 20, 2020, for not following the lockout tagout procedure.

46. Neither Grocholski or Oglesby took leave because of a family member's COVID-19.

47. Neither Grocholski or Oglesby received discipline.

48. Other employees, who here not of Black or African-American ancestry, had similar lock out tag out infractions, but Sullivan did not discipline them for the same conduct.

49. In fact, Sullivan regularly disciplined black employees for infractions of the safety policy or other work violations but ignored or refused to document those same violations in white employees.

**COUNT I - FMLA NOTICE**

50. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

51. During the 12-month period before October 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

52. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before October 20, 2020.

53. During the week of October 20, 2020, Defendant employed fifty or more employees who worked within 75 miles of the location where Plaintiff worked.

54. On or about June 6, 2020, Plaintiff provided notice of unforeseeable FMLA leave to Robert Sullivan.

55. Plaintiff provided notice of his unforeseeable need of FMLA leave as soon as practicable due to the medical emergency.

56. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

57. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

58. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

**COUNT II - FMLA RETALIATION**

59. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

60. During the 12-month period before October 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

61. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before October 20, 2020.

62. During the week of October 20, 2020, Defendant employed fifty or more employees who worked within 75 miles of the location where Plaintiff worked.

63. On or about June 6, 2020, Plaintiff provided notice of unforeseeable FMLA leave to Robert Sullivan.

64. Plaintiff provided notice of his unforeseeable need of FMLA leave as soon as practicable due to the medical emergency.

65. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

66. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

67. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

68. Duck told Defendant that his wife had tested negative for COVID-19 in August of 2020.

69. Defendant did not immediately return Duck to work.

70. Eventually, Defendant returned Duck to work, but it did not return him to the same job he had before his wife's illness.

71. Defendant terminated Plaintiff's employment on October 20, 2020.

72. Defendant's employees knew that Plaintiff's wife suffered from FMLA qualifying conditions for which she needed treatment through her doctor.

73. Less than two months after Duck returned to work after his wife's illness, Defendant terminated his employment.

74. Defendant terminated Plaintiff's employment, in whole or part, because of his use of statutorily protected medical leave.

75. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**COUNT III FMLA INTERFERENCE FAILURE TO REINSTATE**

76. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

77. During the 12-month period before October 20, 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

78. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's wife's COVID-19 diagnosis.

79. During the week of October 20, 2020, Defendant employed fifty or more employees who worked within 75 miles of the location where Plaintiff worked.

80. On or about June 6, 2020, Plaintiff provided notice of unforeseeable FMLA leave to Robert Sullivan.

81. Plaintiff provided notice of the unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

82. Plaintiff took leave he was due under the FMLA.

83. On or about August 28, 2020, Plaintiff sought to return from his leave.

84. Defendant did not immediately reinstate him to his job despite the fact that he had never tested positive for COVID-19.

85. Upon his return, defendant failed or refused to reinstate Duck to his former position as a sorter operator.

86. Defendant interfered with Plaintiff's FMLA rights by not allowing him to return to the same or similar position upon his return.

87. Because of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has lost pay and continues to be paid less.

88. Defendant's actions in not returning Duck to his former position violated the FMLA.

## COUNT IV TITLE VII - RACE DISCHARGE

89. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

90. Plaintiff is a person of colloquially referred to as "Black" or "African-American".

91. Plaintiff was qualified for the position of Sorter Operator.

92. Defendant terminated Plaintiff's employment on or about October 20, 2020.

93. Sullivan, Oglesby, and Grocholski engaged in the same or similar conduct but remained employed.

94. Sullivan, Oglesby, and Andrew Grocholski are persons of European ancestry, colloquially referred to as "White."

95. Other employees who violated the lockout tagout procedure who were not black, were not disciplined.

96. Other employees who violated the lockout tagout procedure who were not black, were not disciplined.

97. Defendant's actions in terminating Plaintiff's employment violated Title VII.

98. Defendant did not discipline Oglesby or Grocholski for the same or similar conduct.

99. Defendant did not terminate Robert Sullivan or Andrew Grocholski for the same or similar conduct.

100. Defendant's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

101. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

102. Defendant's actions in terminating Plaintiff violated Title VII.

**COUNT II- 42 U. S. C. § 1981 DISCHARGE**

103. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

104. Plaintiff is a person of colloquially referred to as "Black" or "African-American".

105. Plaintiff was qualified for the position of Sorter Operator.

106. Defendant terminated Plaintiff's employment on or about October 20, 2020.

107. Sullivan, Oglesby, and Grocholski engaged in the same or similar conduct but remained employed.

108. Sullivan, Oglesby, and Andrew Grocholski are persons of European ancestry, colloquially referred to as "White."

109. Other employees who violated the lockout tagout procedure who were not black, were not disciplined.

110. Other employees who violated the lockout tagout procedure who were not black, were not disciplined.

111. Defendant's actions in terminating Plaintiff's employment violated Title VII.

112. Defendant did not terminate Oglesby or Grocholski for the same or similar conduct.

113. Defendant did not discipline Oglesby or Grocholski for the same or similar conduct.

114. Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

115. Defendant's decision to terminate Plaintiff's employment was made because of his race in violation of 42 U. S. C. § 1981.

116. Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

E. Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F.    Attorneys' fees and costs;

G.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H.    Any different or additional relief as determined by the Court to which Plaintiff is entitled.

                                                                 /s/ Kira Fonteneau
                                                                 Kira Fonteneau (FON007)

**OF COUNSEL:**

The Fonteneau Firm LLC
2 20th Street N, Suite 900
Birmingham, Alabama 35203
T: 205.564.9005 F: 205.564.9006

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Weyerhauser Company**
**Corporation Service Company Inc**
**641 South Lawrence Street**
**Montgomery, Al 36104**

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

**JAMMIE DUCK,**

    **PLAINTIFF,**

**VS.**                                   **CV NO.:**

**WEYERHAUSER COMPANY,**

    **DEFENDANT.**                **JURY TRIAL DEMANDED**

# EXHIBIT A

EEOC Form 5 (11/09)

|  |  |  |
|---|---|---|
| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>420-2021-00294 |
|  |  | and EEOC |
|  | State or local Agency, if any |  |

| Name (indicate Mr., Ms., Mrs.)<br>**MR. JAMMIE L DUCK** | Home Phone<br>(b) (7)(C) 1 line redacted | Year of Birth |
|---|---|---|
| Street Address<br>(b) (7)(C) 1 line redacted | City, State and ZIP Code<br>**COLUMBUS, 39702** |  |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**WEYERHAEUSER** | No. Employees, Members<br>**Under 15** | Phone No. |
|---|---|---|
| Street Address<br> | City, State and ZIP Code<br>**1475 AL MILLPORT, MILLPORT, AL 35576** |  |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Street Address | City, State and ZIP Code |  |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: **10-20-2020**   Latest: **10-20-2020**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**I am an African-American, formerly employed by the above-named employer as a craftsman. On October 16, 2020, I was approached by Robert Sullivan, Caucasian Team Lead, and told to help Andrew 'LNU', Caucasian, correct an issue.**

**While working inside a machine with Andrew and another Caucasian co-worker, Robert Sullivan asked me if a set of rollers was locked out. I told him that I did not know and that I was helping Andrew, who was the radar leader, person responsible for ensuring safety compliance.**

**On October 20, 2020, I was called by the Superintendent, Cory 'LNU' and told that I was discharged for the safety violation. Andrew and the other co-worker were not discharged or disciplined.**

**I believe that I was discharged because of my race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Jammie Duck on 01-11-2021 11:01 AM EST** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

**JAMMIE DUCK,**

    **PLAINTIFF,**

**VS.**                                                          **CV NO.:**

**WEYERHAUSER COMPANY,**

    **DEFENDANT.**                              **JURY TRIAL DEMANDED**

# EXHIBIT B

EEOC Form 161 (11/2020)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jammie L. Duck, Sr.<br>(b) (7)(C) 1 line redacted<br>Columbus, MS 39702 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street South<br>Birmingham, AL 35205 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2021-00294 | MICHAEL COCHRAN,<br>Investigator | (205) 651-7047 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*for James E Love Sr*      June 2, 2021

Enclosures(s)      **BRADLEY A. ANDERSON,**
**District Director**      (Date Issued)

cc:    **WEYERHAEUSER**
c/o Stacey Bradford
Littler Mendelson, P.C.
420 20TH ST N., STE 2300
Birmingham, AL 35203

Kira Fonteneau
**FIVE GROUPS LAW**
2151 Highland Avenue South
Suite 205
Birmingham, AL 35205